759 A.2d 1280

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Mark Newton SPOTZ, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 1999.

Decided Oct. 20, 2000.

Taylor P. Andrews, Carlisle, for Mark Newton Spotz.

M.L. Ebert and Jaime M. Keating, for Com.

Robert A. Graci, for Office of the Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

CASTILLE, Justice.

This is a direct appeal from a sentence of death imposed by the Court of Common Pleas of Cumberland County. Following a capital jury trial, which commenced on May 9, 1996, appellant was convicted of first-degree murder.[1] At the penalty phase, the jury found three aggravating circumstances and two mitigating circumstances, and also found that the aggravating circumstances outweighed the mitigating circumstances; accordingly, it returned a sentence of death.[2] Post-verdict motions were denied and the trial court imposed the death

---

**1.** 18 Pa.C.S. § 2502.

**2.** The aggravating circumstances were that appellant committed a killing while in the perpetration of a felony, *see* 42 Pa.C.S. § 9711(d)(6); that appellant had a significant history of felony convictions involving the use or threat of violence to the person, *id.* § 9711(d)(9); and appellant had been convicted of another murder, committed either before or at the time of the offense at issue, *id.* § 9711(d)(11). The mitigating circumstances were that appellant was neglected during his childhood and appellant had a poor upbringing by his parents. *Id.* § 9711(e)(8).

penalty. For the reasons set forth below, we now affirm the conviction and judgment of sentence.

Although appellant has not challenged the sufficiency of the evidence, this Court performs a self-imposed duty to review the sufficiency of the evidence underlying the first-degree murder conviction in capital cases. *See Commonwealth v. Zettlemoyer*, 500 Pa. 16, 26–27 n. 3, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327, *reh. denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding of all of the elements of the offense beyond a reasonable doubt. *See Commonwealth v. Rhodes*, 510 Pa. 537, 539–40, 510 A.2d 1217, 1218 (1986). Evidence is sufficient to sustain a conviction of first-degree murder where the Commonwealth establishes that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with premeditation or deliberation. *See* 18 Pa.C.S. § 2502(d); *Commonwealth v. Mitchell*, 528 Pa. 546, 550, 599 A.2d 624, 626 (1991). A specific intent to kill may be proven by circumstantial evidence; it may be inferred by the use of a deadly weapon upon a vital part of the victim's body. *Commonwealth v. Bond*, 539 Pa. 299, 305, 652 A.2d 308, 311 (1995).

The evidence adduced at trial showed that on February 2, 1995, appellant, who was on the run after committing multiple homicides in other Pennsylvania counties, arrived in Harrisburg and unsuccessfully attempted to sell rings stolen from one of his previous victims to his friend, Juan Maldonado. Appellant told Maldonado that he was wanted on a homicide charge in Schuylkill County and that his gun was dropping them like flies. After leaving Maldonado, and sometime before 4:00 p.m., appellant abducted the elderly Betty

Amstutz at or near her home in Harrisburg.[3] Over the next few hours, appellant drove to various places with Ms. Amstutz being held hostage, obtaining money, clothing, and lodging by use of her credit card and checking account. Thus, at 3:59 p.m. a bank employee in Harrisburg, cashed a $500 check for Ms. Amstutz, who was accompanied by appellant. A bank security camera filmed the transaction. At approximately 5 p.m. an employee of a sporting goods store in Cumberland County, sold appellant and Ms. Amstutz $262.05 worth of Orlando Magic products, which were purchased with a credit card belonging to Ms. Amstutz. At 5:26 p.m. an employee of a Camp Hill bank, cashed another check in the amount of $1,139.95 for appellant and Ms. Amstutz. A bank security camera filmed that transaction as well. Finally, at 6:04 p.m., Ms. Amstutz and appellant checked into the Knight's Inn in Carlisle, Pennsylvania using Ms. Amstutz's credit card. Shortly thereafter, at approximately 6:30 p.m. a woman and her daughter were driving on McClures Gap Road in Carlisle, Pennsylvania, where they saw a white male standing near a car matching the description of the vehicle owned by Ms. Amstutz. The car was parked at the location where Ms. Amstutz's lifeless body was discovered the next day.[4]

Later that evening, appellant and a friend, Charles Carothers, invited Michelle Rhinehart, the mother of appellant's two children, to join appellant in his room at the Knight's Inn in Carlisle. There, appellant, Carothers and Rhinehart smoked crack cocaine purchased by appellant. Appellant then gave $200 cash to Rhinehart and gave Ms. Amstutz's car to Carothers. Carothers left Rhinehart and appellant in the hotel room

3. The time frame for the abduction was established in part by the fact that investigators found groceries requiring refrigeration on Ms. Amstutz's kitchen counter. The Commonwealth introduced a tape receipt from a local grocery store indicating that her purchases were made on February 2, 1995, at 3:15 p.m.

4. Other evidence was introduced proving appellant's familiarity with the area where Ms. Amstutz's body was found. Specifically, appellant had previously received a traffic citation and met friends on a bridge on that road. After his arrest, appellant falsely denied ever having been on the road.

and drove in Ms. Amstutz's car to the apartment of Rhinehart's sister and her friend.

The next morning, an employee of a tree service accidentally discovered Ms. Amstutz's body on the side of McClures Gap Road and contacted local authorities. Police investigated the scene and broadcast information concerning Ms. Amstutz's missing vehicle. Later that morning, Rhinehart's sister and her friend were en route to the Knight's Inn to pick up Rhinehart and appellant, at Carothers' request. The police stopped them because their vehicle matched the description of Ms. Amstutz's vehicle. Police learned from the two women that appellant was staying at the Knight's Inn.

Thereafter, a police team surrounded appellant's hotel room and, after a lengthy standoff, appellant finally tossed his silver nine-millimeter semiautomatic pistol outside of the hotel room, surrendered and was arrested. A subsequent search of the hotel room yielded a pair of bloodstained jeans, a knife, nine-millimeter full metal jacket ammunition, and five credit cards issued in the name of one of appellant's previous murder victims, Penny Gunnet. In addition, a note written by appellant was recovered, which itemized the money appellant had stolen and his expenditures on crack cocaine and other purchases. At the bottom of the note, appellant had written, a good day's work.

An autopsy performed on Ms. Amstutz showed that she had been shot nine times, including one lethal shot through the neck and another lethal shot to the head. A ballistics test showed that the full metal jacket bullets recovered at the scene of the murder and from Ms. Amstutz's body matched appellant's handgun.[5] Furthermore, appellant's fingerprints were found on Ms. Amstutz's vehicle and an analysis of blood found on appellant's shoe was consistent with Ms. Amstutz's blood.

Christina Noland established the chain of events that led to appellant's presence in Harrisburg and his motive for abduct-

5. The bullets used to kill Ms. Amstutz also matched those that were used to kill appellant's three previous victims, Dustin Spotz, Penny Gunnet and June Ohlinger.

ing and executing Ms. Amstutz. On January 31, 1995, Noland and appellant had fled from appellant's mother's home in Clearfield County after appellant had shot his brother, Dustin, during a family fight. In need of a vehicle to escape, appellant and Noland abducted June Ohlinger in Schuylkill County, stole her car and later murdered her. The two then fled to Rehoboth Beach, Delaware, in Ohlinger's car, where they attempted to alter their appearances. Noland and appellant then returned to York County, Pennsylvania, where they abducted Penny Gunnet, stole her car, and murdered her. Following this murder, Noland and appellant became separated and Noland returned to the home of a friend.

The foregoing evidence overwhelmingly supports the jury's finding that Ms. Amstutz was unlawfully killed, that appellant committed the killing, that appellant acted with the specific intent to kill when he shot Ms. Amstutz nine times, and that the killing was done with premeditation and deliberation. We now proceed to address appellant's allegations of error.

■ Appellant first claims that the trial court erred by denying his motion to dismiss the charges against him pursuant to the compulsory joinder provision of 18 Pa.C.S. § 110. Appellant maintains that the court should have dismissed the charges here because this murder was logically and temporally related to crimes he earlier committed in Schuylkill, York and Clearfield Counties.[6] Appellant essentially argues that the same factors that made evidence of his prior crimes relevant to the trial of this matter also required a conclusion

6. Appellant was convicted of involuntary manslaughter in Clearfield County, arising from the killing of his brother, Dustin. Appellant was then tried separately, convicted and sentenced to death for the killing of June Ohlinger in Schuylkill County. This Court affirmed the death sentence. *See Commonwealth v. Spotz,* 552 Pa. 499, 716 A.2d 580 (1998) (hereinafter *Spotz I* ). Appellant was later convicted of first-degree murder in York County and sentenced to death for the murder of Penny Gunnet. This Court likewise affirmed that death sentence. *Commonwealth v. Spotz,* 756 A.2d 1139 (Pa.2000) (hereinafter *Spotz II* ). It was after avoiding capture for the murder of Ms. Gunnet, and still in need of a car and money to continue his flight, that appellant murdered Ms. Amstutz in Cumberland County.

that, for purposes of § 110, the killing here must be viewed as being part of the same criminal episode as the prior crimes.

■ Appellant's claim is without merit. Indeed, this Court recently rejected a substantially similar claim in *Spotz II*. As was noted there, § 110's compulsory joinder rule was designed to serve two distinct policy considerations: (1) to protect a person accused of crimes from governmental harassment by being forced to undergo successive trials for offenses stemming from the same criminal episode, and (2) to ensure judicial economy. *Spotz II, supra,* at 1157; *Commonwealth v. Hude,* 500 Pa. 482, 489, 458 A.2d 177, 180 (1983). Section 110(1)(ii) will only bar a prosecution if: (1) the former prosecution resulted in an acquittal or a conviction; (2) the instant prosecution is based on the same criminal conduct or arose from the same criminal episode as the former prosecution; (3) the prosecutor was aware of the instant charges before the commencement of the trials on the former charges; and (4) the instant charges and the former charges were within the jurisdiction of a single court. *Spotz II, supra,* at 1157; *Commonwealth v. Hockenbury,* 549 Pa. 527, 533, 701 A.2d 1334, 1337 (1997); *Commonwealth v. Bracalielly,* 540 Pa. 460, 472, 658 A.2d 755, 761 (1995). Here, as in *Spotz II,* the dispute centers on the second factor. Because this murder and the previous killings were not part of the same criminal episode for § 110 purposes, appellant's claim must be rejected.

■ To determine whether various acts constitute a single criminal episode, a court must consider the logical relationship and the temporal relationship between the acts. *Spotz II, supra; Bracalielly, supra,* at 472, 658 A.2d at 761. The mere fact that certain evidence of appellant's other crimes was relevant and admissible in this prosecution does not mean that the four killings must be deemed part of a single criminal episode. Other crimes evidence may be admissible for a variety of evidentiary purposes. Here, the evidence was relevant to establish motive, *i.e.,* appellant's need to escape after the previous killings, his intent, his identity as the killer, and to establish the sequence of events leading up to the

murder of Ms. Amstutz. These limited evidentiary purposes of the relevant evidence stand in contrast to the purposes for which portions of the evidence were introduced in the separate prosecutions for each of the killings, where the relevant evidence constituted direct evidence of appellant's guilt. *See Spotz II, supra*, at 1158.

However, the mere fact that the prior killings were admissible here for limited purposes does not alter their essentially independent nature. The killings involved four different victims, committed in four counties, occurring on different days, and generating four separate criminal investigations. The first killing occurred on January 31, 1995, in Clearfield County, when appellant killed his brother during a family argument. The second killing occurred on February 1, 1995, in Schuylkill County, where appellant, after fleeing Clearfield County, abducted June Ohlinger, stole her car and murdered her. Following that murder, appellant and Noland fled to Rehoboth Beach, Delaware. They returned to York County, Pennsylvania, on February 2, 1995, where they abducted Penny Gunnet, stole her car and appellant ultimately murdered her. After murdering Ms. Gunnet, appellant fled to Harrisburg, without Noland, abducted Ms. Amstutz, stole her car, used her to get money and lodging from the victim, and then killed her. The killings are logically connected primarily by the fact that appellant committed all four of them.

Furthermore, although Noland was an important witness at all three capital trials, there were other, equally important witnesses here who testified only to evidence proving that appellant murdered Ms. Amstutz. Thus, the Commonwealth called numerous witnesses to establish that appellant was seen with Ms. Amstutz prior to her murder, that a man matching appellant's description was seen standing near a vehicle matching Ms. Amstutz's at the location where her dead body was later found, and that appellant was staying at the Knight's Inn. Moreover, an investigation unique to this killing was conducted by local law enforcement officials, which resulted in testimony from different investigating officers and authorities. What this Court noted in *Spotz II* is equally applicable here:

this is not a case in which the Commonwealth relied solely upon the same witness(es) to prove each of the killings. Instead, the cases generated testimony of different lay and police witnesses as well as the establishment of separate chains of custody. *Spotz II, supra,* at 1158–59. Accordingly, there was not such a substantial duplication of issues of law and fact and duplicative witnesses in the four cases that joinder was required. *See also Commonwealth v. Anthony,* 553 Pa. 55, 64, 717 A.2d 1015, 1019 (1998); *Bracalielly, supra,* at 472, 658 A.2d at 761.

Appellant also argues that joinder was required by this Court's holding in *Commonwealth v. Hude.* We rejected a similar argument in *Spotz II.* That analysis need not be repeated here. It is enough to note that the killings of separate human beings here cannot be compared to the ongoing, indistinguishable drug sales at issue in *Hude. Spotz II, supra,* at 1159. Accordingly, the trial court did not err in denying appellant's motion to dismiss the charges pursuant to the compulsory joinder requirements of § 110.

Appellant next contends that the trial court abused its discretion in failing to issue an advance cautionary instruction regarding the limited admissibility of the evidence of the previous killings. Where the proffered evidence of other crimes is extensive, appellant argues, waiting until the court's final charge to caution the jury is improper.

This Court has held that a limiting instruction may be given either as the evidence is admitted or as part of the general charge. *Commonwealth v. Covil,* 474 Pa. 375, 383, 378 A.2d 841, 845 (1977). Rule 1119(d) of the Rules of Criminal Procedure, adopted after *Covil,* likewise states that a trial judge may give instruction to the jury before the taking of evidence or at any time during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case. Pa.R.Crim.P. 1119(d). The Comment to the Rule reaffirms that the determination of when to charge the jury is discretionary with the trial court: It is intended that the trial judge determine on a case by case basis whether instructions before

the taking of evidence or at anytime during trial are appropriate or necessary to assist the jury in hearing the case. Furthermore, although the Court in *Covil* expressed a preference that trial courts give a limiting instruction at the time the evidence is introduced, where possible, *Covil* itself approved a determination in that case to postpone issuing the charge. 474 Pa. at 384, 378 A.2d at 846.

The other crimes evidence in this case indeed was extensive, involving multiple previous crimes and multiple witnesses. In addition, the evidence was admissible for a variety of relevant purposes, *i.e.*, to prove motive, intent, identity, and the sequence of events—as the court ultimately instructed the jury in its closing charge. The trial court here determined that, because of the complexity of the evidence and the number of witnesses involved in presenting it, it would be confusing and repetitive to give instructions on the limited admissibility of the particular evidence as it was introduced. In so holding, the trial court relied upon the Superior Court's decision in *Commonwealth v. Enders*, 407 Pa.Super. 201, 595 A.2d 600 (1991). In *Enders*, the Superior Court held that the trial court there did not err in delaying a limiting instruction to the final charge where, *inter alia*, the evidence subject to the charge was extensive and numerous witnesses were called. As in *Enders*, the trial court was in the best position to make the determination here, and we perceive no abuse of discretion. Indeed, given the multiple purposes for which the evidence was relevant—purposes that appellant was free to dispute—and the number of witnesses and acts involved, a comprehensive advance instruction by the trial court would have been difficult. We perceive no error in waiting until the totality of the evidence was placed before the jury before instructing them on the specific, appropriate purposes of the evidence.[7]

7. We also note that appellant's suggestion that the jury was unaware of the limited purpose of the evidence until the court's final charge is not entirely true. In its opening statement, the Commonwealth made reference to the other crimes evidence it would present, noting that it would help to show motive. At no point did the prosecutor suggest that the evidence proved appellant to have a propensity for crime. The fact

■ In a related argument, appellant next complains that the trial court's instruction concerning the other crimes evidence was defective because it over-emphasized the relevance of the evidence rather than emphasizing the caution with which the jury should consider it. Appellant argues that, rather than being a cautionary limiting instruction, the court's instruction wrongly elaborated on the value of the evidence to the Commonwealth.

■ An instruction will be upheld if it clearly, adequately and accurately reflects the law. *Commonwealth v. Hawkins,* 549 Pa. 352, 391, 701 A.2d 492, 511 (1997). The trial court may use its own form of expression to explain difficult legal concepts to the jury, as long as the trial court's instruction accurately conveys the law. *Id.* There was no error in the comprehensive instruction here. The Court began the charge by noting the single, improper purpose for which the jury could *not* consider the evidence, *i.e.,* to show bad character or criminal propensity. Part and parcel of any instruction as to what use of the evidence could *not* be made was guidance as to the proper purpose for which it could be considered. Those purposes and concepts, *i.e.,* intent, motive etc., were not self-explanatory, but required elaboration. Appellant does not dispute that the evidentiary purposes outlined in the court's charge here were both applicable and accurately described. Instead, his complaint appears to be that the instruction was *too* accurate. Because the instruction accurately explained the purpose for which the evidence could, and could not, be considered in light of the circumstances, it was not erroneous. Accordingly, appellant's claim fails.

■ Appellant's remaining three claims concern the penalty phase. First, appellant contends that the trial court erred in its penalty phase instruction to the jury because it consolidated six mitigating circumstances urged by the defense into four. At the penalty phase, appellant had invoked three

that the evidence was not employed, or argued, for an improper purpose is further reason to trust that the jury, which is presumed to have followed the charge, did so here. *See Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992).

statutory mitigating circumstances: (1) he was under the influence of extreme mental or emotional disturbance;[8] (2) his capacity to appreciate the criminality of his conduct or to conform his conduct to the law was substantially impaired;[9] and (3) his age at the time of the offense.[10] In addition, appellant argued to the jury six other mitigating circumstances falling under the statutory catchall provision, i.e., [a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense. 42 Pa.C.S. § 9711(e)(8). The six circumstances were that: (1) he suffered extreme neglect during his formative years; (2) he suffered physical abuse from his father and older brother; (3) he was actively taught anti-social behavior by his mother and stepfather in his formative years; (4) he was denied the treatment he needed by his mother and stepfather; (5) despite his difficult history, he has helped others in need; and (6) he was a talented artist and writer. Appellant requested that these six other mitigating circumstances be specifically enumerated in the court's jury charge and printed on the verdict slip. The trial court elected not to simply reproduce appellant's list of alleged mitigating circumstances, but instead charged the jury on the four specific statutory mitigators, including the catchall provision. In speaking of the catchall provision, the court listed some, but not all, of the six circumstances counsel had argued to the jury.[11] The court was careful to emphasize, however, that the circumstances it listed were not the exclusive circumstances to consider under the catchall provision. In addition, the court instructed the jury to consider counsel's argument with respect to the mitigating factors.

Appellant contends that the trial court's failure to specifically track his argument by listing each and every one of the

8. 42 Pa.C.S. § 9711(e)(2).

9. Id. § 9711(e)(3).

10. Id. § 9711(e)(4).

11. The trial court listed four factors: (1) appellant was neglected during his childhood, including any treatment he failed to receive; (2) appellant was physically abused; (3) appellant had a poor upbringing by his parents; and (4) appellant could have been helpful to others.

mitigating circumstances he had argued infringed upon the province of the jury to decide the mitigating circumstances and, thus, violated the Eighth and Fourteenth Amendments of the United States Constitution. This claim is meritless.

This Court has already recognized that the trial court does not unconstitutionally limit the range of mitigating circumstances to be considered by the jury when it accurately describes the relevant statutory mitigating circumstances found at 42 Pa.C.S. § 9711(e), and also instructs the jury on the catchall mitigation. *Commonwealth v. Williams,* 532 Pa. 265, 279, 615 A.2d 716, 723 (1992). In *Williams,* the defendant had invoked as a mitigating circumstance that he had acted under extreme duress or under the substantial domination of another person. 42 Pa.C.S. § 9711(e)(5). He maintained that the court's charge, which tracked the statutory language, unconstitutionally limited the range of mitigating circumstances that the jury could consider. *Williams, supra* at 279, 615 A.2d at 723. This Court rejected the claim, holding that:

> While we agree with appellant that the Eighth Amendment to the United States Constitution requires that the sentencer must consider any relevant mitigating evidence, we cannot conclude that the trial court herein unconstitutionally limited the range of mitigating circumstances that the jury could consider through its use of the words *extreme* and *substantial.* . . . [T]he trial court . . . instructed the jury on the 'catchall' provision 'any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.' 42 Pa.C.S. § 9711(e)(8). . . . To the extent that relevant evidence nevertheless may not qualify for one of those two enumerated mitigating circumstances, it can always be considered under subsection (e)(8).

*Id.* (emphasis in original). This Court further specifically noted that it is presumed that the jury will follow the clearly open-ended nature of the reference to 'any other evidence of mitigation' in (e)(8). *Id.* at 280, 615 A.2d at 723–24. *See also Commonwealth v. Jermyn,* 551 Pa. 96, 709 A.2d 849 (1998).

Similarly, in *Commonwealth v. Jasper*, 531 Pa. 1, 610 A.2d 949 (1992), the defendant had claimed that the mitigating evidence he had argued was not specifically enumerated in the Court's charge, but rather was included under the catchall provision at § 9711(e)(8). This Court unequivocally held that the trial court was not required to specifically reiterate the defendant's arguments in mitigation:

> To seek to obligate a court … to specify to a jury that 'anything' in mitigation must be an equal part of the other remaining enumerated mitigating circumstances is to engage in frivolous doubletalk. For in the most elementary and plain sense, 'any other' is itself an enumerated consideration. … That is to say that our statutory scheme employs no tricks, gimmicks or barriers of any sort designed to frustrate the full presentation of mitigating evidence which is balanced against aggravating circumstances by an unbound jury.

*Id.* at 11–12, 610 A.2d at 954.

Here, the trial court's charge clearly tracked the relevant statutory mitigating circumstances alleged in this case:

> The first one is that the defendant was under the influence of extreme mental or emotional disturbance. Two, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. Three, the age of the defendant at the time of the crime. And four, *any other evidence of mitigation concerning the character and record of the defendant, and the circumstances of his offense, including but not limited to* that the defendant was neglected during his childhood, including any treatment he failed to receive, that the defendant was physically abused, that the defendant had a poor upbringing by his parents, that the defendant could have been helpful to others. *Consider counsel's argument in that—in all these respects.* …

N.T. 5/16/96 at 1909–10 (emphasis added). The trial court thus specifically instructed the jury to consider any other evidence of mitigation concerning the character and record of the defendant. The trial court highlighted representative

samples of appellant's arguments and made clear that those examples were not exclusive, and emphasized that the jury was to consider appellant's counsel's arguments respecting mitigation. With regard to the only alleged mitigating factors that the court did not specifically enumerate, *i.e.*, that appellant supposedly was a talented artist and that his family had mistreated him, the court never limited appellant's counsel's ability to vigorously argue those points to the jury.

There was no error here. The jury was fully and accurately charged. No limitation was placed upon its consideration of mitigating circumstances. Accordingly, no relief is warranted on this issue.

 Appellant next contends that the trial court's penalty phase definition of the term preponderance of the evidence, in explaining appellant's burden of proving mitigating circumstances, was erroneous. According to appellant, the court's charge failed to adequately convey the difference between the Commonwealth's burden (beyond a reasonable doubt) and his burden (preponderance). When reviewing a challenge to a jury instruction, we must review the charge as a whole. *See Commonwealth v. Jones*, 546 Pa. 161, 683 A.2d 1181 (1996). So viewed, there was no error here.

The trial court gave the following instruction regarding the relative burdens of proof borne by the Commonwealth and appellant at the penalty phase:

The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean, as I told you before, that the Commonwealth must prove the aggravating circumstance beyond all doubt and to a mathematical certainty. A reasonable doubt is the kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon an important matter in his or her own affairs. A reasonable doubt must be a real doubt[,] it may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty. By contrast, the defendant must prove any mitigating circumstances. However, the defendant only has to prove those mitigating circum-

stances by a preponderance of the evidence. That is by the greater weight of the evidence.

N.T. 5/16/96 at 1905–06. The court further emphasized the Commonwealth's higher burden, as follows:

This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives a defendant the full benefit of any mitigating circumstances. It is closely related to the burden of proof requirements. Remember, the Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. While the defendant only has to prove any mitigating circumstance by a preponderance of the evidence.

N.T. 5/16/96 at 1912.

In assailing this charge, appellant cites to cases where the trial court stated that the preponderance standard was a lesser burden.[12] But this Court has never suggested that that particular language was required. To the contrary, in *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190 (1997), we specifically rejected a claim that a charge, materially indistinguishable from the first quoted portion of the charge above, was defective because it did not clarify that preponderance is a lesser standard than reasonable doubt. We held that the charge issued in *Hall*, though terse, was adequate because, [t]he trial court instructed the jury that mitigating circumstances need only be proven by a preponderance of the evidence and that a preponderance exists when the evidence for the proposition to be proven is greater than the weight of the evidence against the proposition. *Hall, supra* at 305, 701 A.2d at 208. The charge here likewise accurately defined preponderance of the evidence.

Moreover, the instruction here was stronger than the charge in *Hall*. In the second quoted portion of the charge, the trial court specifically contrasted the relative burdens of the Commonwealth and appellant by reminding the jury that the Commonwealth must prove any aggravating circumstance be-

12. *See, e.g., Commonwealth v. Wilson,* 538 Pa. 485, 649 A.2d 435 (1994); *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992); *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568 (1992).

yond a reasonable doubt. While the defendant *only* has to prove any mitigating circumstance by a preponderance of the evidence. The court also emphasized that aggravating and mitigating circumstances were treated differently under the law. The court's use of the terms different, safeguard, full benefit, and its statement that the defendant only had to prove his burden by a preponderance, clearly communicated to the jury the qualitative differences in the respective burdens of proof.

Finally, the language used in the trial court's charge was virtually identical to the charge issued in *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167 (1999). The Court in *Williams* held that, when viewed as a whole, the trial court's penalty phase instructions plainly informed the jury concerning the relative burdens of proof applicable to aggravating circumstances and mitigating circumstances and clearly conveyed that Williams bore the lesser burden. *Id.* at 245, 732 A.2d at 1187. As this Court has previously upheld the accuracy of this jury instruction, no relief is warranted.[13]

 Appellant last contends that the trial court should have instructed the·jury at the penalty phase, pursuant to *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that there is no parole from a sentence of life imprisonment in Pennsylvania. A *Simmons* instruction, detailing what a life sentence means in Pennsylvania, is required only if the prosecution makes the defendant's future dangerousness an issue in the case and the defendant specifically requests such an instruction. *Commonwealth v. Smith*, 544 Pa. 219, 242, 675 A.2d 1221, 1232 (1996), *Commonwealth v. Chandler*, 554 Pa. 401, 414, 721 A.2d 1040, 1046 (1998). Here,

13. Appellant attempts to distinguish *Hall* on the ground that it involved a claim of ineffective assistance of counsel, while appellant preserved his objection here. The *Williams* case also involved a claim of ineffective assistance. Appellant's distinction fails. The ineffectiveness claim was rejected in *Hall* precisely because the charge accurately and correctly conveyed to the jury its task of determining if an aggravating or mitigating circumstance was proven. 549 Pa. at 306, 701 A.2d at 208. Likewise, the charge in *Williams*, materially identical to the charge here, was held to be a proper charge. *Williams*, 557 Pa. at 245, 732 A.2d at 1187. *Hall* and *Williams* unquestionably control.

neither of the conjunctive predicates requiring a *Simmons* instruction exists. Appellant concedes both that the Commonwealth did not argue future dangerousness and that he never requested a *Simmons* charge. The trial court did not err in failing to issue a charge appellant was not entitled to and did not request.[14]

 Finally, this Court must conduct a statutory review of the death sentence. Pursuant to the version of 42 Pa.C.S. § 9711(h)(3) applicable to this appeal, this Court must affirm the sentence of death unless we determine that:

(i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the findings of at least one aggravating circumstance specified in subsection (d); or (iii) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the circumstances of the crime and the character and record of the defendant.

*Id.*[15] After reviewing the record below, we conclude that the sentence imposed was not the product of passion, prejudice or any other arbitrary factor. We also conclude that the evidence was sufficient to establish the three aggravating factors found by the jury: that appellant committed a killing while in the perpetration of a felony;[16] that appellant had a significant

**14.** Appellant argues that his *Simmons* claim should prevail, notwithstanding the absence of the necessary predicates, under our relaxed waiver rule in capital case direct appeals. *See Zettlemoyer, supra.* Relaxed waiver has no applicability here. The trial court's obligation to issue a *Simmons* charge is triggered only upon the existence of *twin* requirements, *i.e.,* future dangerousness being placed at issue, and a defense request. These are substantive requirements, not procedural ones. Appellant's *Simmons* claim fails on the merits.

**15.** Effective June 25, 1997, the General Assembly repealed 42 Pa.C.S. § 9711(3)(h)(iii), pursuant to which proportionality review is required. However, we continue to review for proportionality all cases on direct appeal in which the sentence of death was imposed prior to that date. · *See Commonwealth v. Gribble,* 550 Pa. 62, 703 A.2d 426 (1997) (Act 28 does not apply retroactively).

**16.** The Commonwealth apparently did not pursue charges of kidnapping, robbery or robbery of a motor vehicle, but the court at the penalty phase fully and properly instructed the jury on each element of those

history of felony convictions;[17] and that appellant had been convicted of another murder, committed either before or at the time of the offense at issue.

With respect to proportionality, since the jury found that the three aggravating circumstances outweighed the two mitigating circumstances, it was statutorily required to impose a sentence of death. 42 Pa.C.S. § 9711(c)(1)(iv). Further, we have conducted an independent review of similar cases and reviewed the data collected by the Administrative Office of the Pennsylvania Courts, which reveals that the sentence of death was not disproportionate to the penalty imposed in similar cases. *See e.g.*, *Commonwealth v. Williams*, 554 Pa. 1, 720 A.2d 679 (1998); *Bond, supra.*

Accordingly, we affirm the verdict and sentence of death imposed upon appellant by the Court of Common Pleas of Cumberland County.[18]

Chief Justice FLAHERTY files a concurring opinion.

Justice NIGRO files a concurring opinion.

FLAHERTY, Chief Justice, concurring.

A jury with the weighty responsibility of deciding whether one lives or is put to death certainly should be made aware of what is meant by life without parole in this commonwealth, thus, although I join the majority, I write once again to express my view that a *Simmons* type instruction should be given in all capital cases.

felonies and that the Commonwealth bore the burden of proving these elements beyond a reasonable doubt.

17. Appellant had three prior convictions for robbery, one prior conviction for conspiracy to commit robbery, and three for burglary. In addition, he was convicted of aggravated assault and involuntary manslaughter with regard to the killing of his brother and he was convicted of first-degree murder in the deaths of June Ohlinger and Penny Gunnet.

18. The Prothonotary of this Court is directed to transmit to the Governor's office a full and complete record of the trial, sentencing hearing, imposition of sentence and review by the Supreme Court pursuant to 42 Pa.C.S. § 9711(i).

NIGRO, Justice, concurring.

I join the majority opinion but write separately only to clarify my position regarding Appellant's claim that he was entitled to a *Simmons* instruction at his penalty hearing. Under the current state of the law, I am compelled to agree with the majority that the trial court did not err in failing to issue a *Simmons* instruction in the instant case, as Appellant did not request such an instruction nor did the Commonwealth raise the issue of Appellant's future dangerousness. However, for the reasons more fully explained in my concurring opinion in *Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31, 43–44 (1998), I continue to believe that the better approach would be to give a standardized *Simmons* instruction in all capital cases.