J-S23032-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
        Appellee : 
   v. :
:
SHAWN HILL, :
:
        Appellant : No. 1527 EDA 2014

Appeal from the Judgment of Sentence Entered April 21, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No: CP-51-CR-0009017-2012

BEFORE: DONOHUE, SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED JUNE 16, 2015**

Shawn Hill (Appellant) appeals from the judgment of sentence imposed following his convictions for, *inter alia*, first-degree murder. We affirm.

The trial court summarized the evidence offered at trial as follows.

> Around midnight on July 5, 2011, Chastity Cannon dropped off her mother, Darlene Cannon, at her home, 191 Widener Street in North Philadelphia. Upon reaching her porch, Darlene Cannon overheard her neighbors, Marcella Ingrum of 187 Widener Street and Paula Wilkins of 189 Widener Street, complaining about Cannon's practice of pouring condiments and chocolate syrup on her porch stairs. Cannon and Ingrum began [] arguing over Ingrum's comments. The argument prompted Cannon to call her daughter, Chastity Cannon, and explain the altercation to her. Chastity Cannon came back to Widener Street with her daughter and other females, both cousins and friends. Darlene Cannon identified Ingrum as the instigator of the altercation. Chastity Cannon and the other females began [] arguing with Ingrum. Eventually, Sydney Hill, [Appellant's] brother and Ingrum's son, joined the argument.

*Retired Senior Judge assigned to the Superior Court.

Meanwhile, Ingrum called her daughter Rorie Hill, summoning her and [Appellant] to the incident. Rorie Hill and [Appellant] arrived at 187 Widener Street. Upon exiting the car, Rorie Hill and [Appellant] joined the argument. Sakima Santos, Chastity Cannon's fiancé, arrived on the scene and also joined the argument. Santos noticed [Appellant] on the scene approximately five to ten minutes after he arrived.

* * *

Shortly thereafter, the argument resumed when two cars carrying a group of approximately eight males arrived on Widener Street. Jamel Newman, the decedent, was one of the males who arrived in the car. Most of the males exited the car and joined the argument. Santos was in the center of the crowd, attempting to calm down [Appellant] and his family, explaining that no one wanted to fight. Pushing and shoving broke out, at which point Santos observed [Appellant] pull a small, silver gun and fire two shots.

Upon hearing gun shots, Chastity Cannon turned to run toward Second Street but became caught up in the crowd. She noticed that her arm had been shot. She turned around and saw [Appellant] pointing a gun at her. [Appellant] struck her with another bullet. Santos, having started to run, noticed his fiancé[] lying in the street. When Santos turned back, he saw [Appellant] pointing a gun at him. Santos asked [Appellant] not to shoot and told him that "we have kids." Santos then watched as [Appellant] shot him twice in the stomach. Santos counted to seven before standing up and carrying his fiancé to a police car at the end of Widener Street. When Santos arrived at a police car located at the corner of Second Street and Widener Street he noticed the decedent, Jamel Newman, lying next to it.

On July 5, 2011 shortly after midnight, Patrick Duncan and his wife were driving South on Second Street. Stopping at a light at Second Street and Nedro Avenue, Duncan observed two people running, one down the sidewalk and one down the street. Duncan hesitated to go through the light because he feared the two runners would cut in front of his car. As he began to accelerate, he noticed a person coming out of Widener Street on foot. That person made a left onto Second Street and as he did,

he fell. Duncan also observed two different males standing next to the car on the Southeast corner of the street. The males stood with their backs to the car and were facing the person who turned off of Widener Street. Duncan then observed five or six gunshots. He saw one of the males standing by the car and holding a gun with two hands, and the other firing a gun. Duncan heard the person whom he saw fall moan as he drove past him on Second Street. On July 5, 2011, later in the morning, Duncan called Cheltenham Police who directed him to the Philadelphia Homicide Unit where Duncan then gave a statement consistent with his testimony.

Chastity Johnson, Chastity Cannon's daughter, was also present during the argument and the shooting. Johnson observed Newman at the scene of the argument. She also saw [Appellant] pull out a gun and saw a spark ignite from it. Johnson saw Newman start to run. Johnson began running down the sidewalk, but soon moved to the street, which was less crowded. She watched Newman run in the street and observed [Appellant] following him. Johnson saw another man with [Appellant] who was carrying guns.

Officers Auty and Deacon, after quelling the argument on the 100 Block of Widener Street, had just reached the corner of Second and Nedro Streets when they heard gunfire. The [o]fficers pulled over and saw a great deal of smoke and the decedent lying in the street. They pulled up to him and Officer Auty checked for signs of life, but found none. Sakima Santos approached Officer Auty, carrying Chastity Cannon and explaining that they had been shot. Officer Auty took Santos and Cannon to Einstein Hospital.

* * *

In her statement to police, Marcella Ingrum[, Appellant's mother,] named [Appellant] as the shooter and identified him from a police photo array. At trial, Ingrum testified she did not remember giving or signing her statement, claiming she was under the influence of alcohol and marijuana at the time she gave it. Detective Pitts testified that Ingrum did not appear to be under the influence of either substance at the time she gave her statement, which she delivered in a coherent and

cooperative manner. In her statement to police, Rorie Hill said she witnessed [Appellant, her brother,] pull out a gun and fire a shot while arguing on Widener Street. At trial, Hill recanted her statement, claiming the police forced her to name [Appellant]. Detective Harkins testified that he did not threaten Hill while taking her statement, nor did Hill indicate that she did not wish to speak with police.

[Ballistics evidence showed that three different guns were involved in the incident: one .380 and two nine millimeter firearms. None was forensically linked to Appellant.]

As a result of suffering two gunshot wounds to the stomach, Sakima Santos spent two and a half months in the hospital, ten of those days in a medically induced coma. Santos had his small intestines removed, and suffers from damage to his pancreas and liver. As a result of her three gunshot wounds, part of Chastity Cannon's lower intestine was removed, she suffered two cracked ribs, and the bone in her left arm from the shoulder to elbow was shattered. Her arm bone was replaced with a metal rod. A bullet also tore her left lung and injured her spleen, which was removed in surgery. Six to seven months after the incident, doctors removed a bullet from Cannon's back that could not have been removed during the initial procedures.

Trial Court Opinion (TCO), 7/17/2014, at 2-7 (citations omitted).

On April 7, 2014, following a bench trial, Appellant was convicted of, *inter alia*, first-degree murder; conspiracy to commit first-degree murder; three counts of recklessly endangering another person (REAP); and two counts each of attempted murder, aggravated assault, and possession of a firearm by one prohibited. On April 21, 2014, Appellant was sentenced to life imprisonment as well as to several lesser sentences. Appellant timely filed a post-sentence motion, which was denied by order of May 12, 2014.

- 4 -

Appellant timely filed his notice of appeal, and thereafter a court-ordered concise statement of errors complained of on appeal.

On appeal, Appellant challenges the sufficiency and the weight of his murder conviction, and alleges that the prosecution violated **Brady v. Maryland**, 373 U.S. 83 (1963).  Appellant's Brief at 6.

We begin with Appellant's sufficiency challenge, mindful of our standard of review.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.
>
> Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa. Super. 2014) (internal quotation marks and citations omitted). "Evidence is sufficient to sustain a conviction of first-degree murder where the Commonwealth establishes that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with premeditation or deliberation." *Commonwealth v. Spotz*, 759 A.2d 1280, 1283 (Pa. 2000).

Appellant's sufficiency claim is two-fold. He first claims that "the inference that [] Appellant has been accurately identified is not a reasonable inference" because there were "glaring inconsistencies" in the description of the shooter and no one identified Appellant as being one of the Widener and Second shooters. Appellant's Brief at 29-30. He also argues that the Commonwealth failed to prove that the shooter acted with a specific intent to kill. *Id.* at 30.

The trial court disagreed:

> Although the ballistic evidence does not conclusively establish that [Appellant] fatally shot the decedent, eyewitness evidence does establish that [Appellant] and a co[-]conspirator shot at the decedent multiple times, killing him. Thus, [Appellant's] guilt for first-degree murder under a conspiracy theory is established. *See Commonwealth v. Smith*, 985 A.2d 886, 896-97 (Pa. 2009) ("Even assuming, as Appellant urges us to do, that the fatal bullet was fired by [the co-conspirator] and not Appellant, the evidence was sufficient to convict Appellant of first-degree murder as a co-conspirator."). *See also Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008) (each member of a conspiracy to commit homicide

- 6 -

can be convicted of first-degree murder, regardless of who inflicted the fatal wound); ***Commonwealth v. Boxley***, [] 838 A.2d 608, 612 (Pa. 2003) (evidence was sufficient to support appellant's conviction for first-degree murder, regardless of whether appellant or one of his co-conspirators fired the fatal shot).

The testimony of Sakima Santos amply establishes that [Appellant] had a gun during the incident in question and was using it to shoot people in a deliberate and premeditated manner. Further eyewitness testimony from Patrick Duncan, who was not a party to this conflict and whose car was struck by a bullet as he drove by, establishes that two shooters chased the decedent and shot him. Duncan's testimony, in combination with that of Chastity Johnson, establishes that [Appellant] was one of these two shooters. She saw [Appellant] and another man chase the decedent, who was running away. Mere seconds later, Duncan saw the two men shoot the decedent. Because the evidence shows that [Appellant] and a co[-]conspirator pursued the decedent and shot at him repeatedly, striking his body seven times and causing his death, it is sufficient to establish that he intended to kill, and did kill, the decedent.

TCO, 7/17/2014, at 9-10 (unnecessary capitalization omitted).

We agree with the trial court that Appellant's sufficiency challenge lacks merit. Many witnesses, including Appellant's very own mother, identified Appellant as one of the initial shooters. The inference that Appellant was one of the men who chased down and shot the decedent at Second and Widener streets logically follows, and is supported by the eyewitness testimony. Appellant's arguments merely attack the credibility determinations of the fact-finder, not the sufficiency of the evidence, and urge us to consider the evidence in the light most favorable to him, rather than the verdict winner. Accordingly, his sufficiency challenge fails. ***See***,

*e.g.*, ***Commonwealth v. Love***, 896 A.2d 1276, 1283 (Pa. Super. 2006) ("We may not weigh the evidence or substitute our judgment for that of the fact-finder. … When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part, or none of the evidence.").

Appellant next claims that the verdict was against the weight of the evidence.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

***Commonwealth v. Widmer***, 560 Pa. 308, 321-22, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted).

Appellant's argument that the verdict was against the weight of the evidence is based upon the lack of DNA or ballistics evidence pointing to him, and upon alleged inconsistencies in the testimony of the witnesses.

- 8 -

Appellant's Brief at 26. To the former basis, we note that "an absence of evidence is not evidence of absence." **Commonwealth v. Heilman**, 867 A.2d 542, 547 (Pa. Super. 2005) (affirming denial of post-conviction DNA testing that would not have proven the appellant's innocence and reiterating that "a murder suspect may be convicted on wholly circumstantial evidence"). The fact that there was no forensic evidence of Appellant's guilt does not require a finding that Appellant is innocent.

Appellant's attack on the inconsistencies in the evidence is similarly meritless. Aside from the fact that Appellant largely points to trivial differences in testimony that are not necessarily conflicting,[1] reconciling inconsistencies in the testimony was within the province of the fact-finder. **Commonwealth v. Simmons**, 662 A.2d 621, 630 (Pa. 1995) ("After examining the evidence in this case, we find that appellant's assertion that the inconsistencies in the witnesses' testimony rendered them incredible to have no merit since the inaccuracies claimed are only minor and a witness's credibility is solely for the [fact-finder] to determine."). Appellant has failed

---

[1] For example, Appellant argues that "Sakima Santos described that the shooter was wearing blue pants when another witness described Appellant as wearing blue jeans[;]" and that "Chastity Cannon described the shooter as wearing a shirt with writing on it whereas others described him as wearing a white T-shirt." Appellant's Brief at 27. "Blue jeans" and "blue pants" both describe leg coverings that are blue; a T-shirt can both be white and have writing on it.

to convince us that the trial court abused its discretion in holding that the verdict was not against the weight of the evidence.

Finally, Appellant claims that the Commonwealth violated **Brady** "where it concealed evidence that a bullet was removed from the body of Chastity Cannon and where it failed to procure it for comparison to the other ballistics evidence in the case[.]" Appellant's Brief at 24. We disagree.

> To establish a **Brady** violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

> The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

**Commonwealth v. Watkins**, 108 A.3d 692, 711 (Pa. 2014) (internal quotation marks and citations omitted).

Here, Appellant has failed to establish a single one of the elements required by **Brady** and its progeny. Most glaringly, he points to nothing in the record that proves the Commonwealth suppressed evidence. Instead, Appellant notes that the Commonwealth "presumably" had the medical records of the victims "for a period of time" before they testified at trial, and "presumably had knowledge that projectiles were removed from their

bodies." Appellant's Brief at 31-32. Appellant cannot meet his burden with unsupported presumptions. Furthermore, as no ballistics evidence offered at trial incriminated Appellant, the missing evidence was not material, because no testing on the bullets removed from the victims could have exculpated Appellant or impeached the Commonwealth's evidence against him. Finally, as the Commonwealth notes, Appellant was convicted of conspiracy to commit first-degree murder, and therefore was responsible for the shootings even if it was his co-conspirator's gun that fired the bullets recovered from the bodies of the victims. Commonwealth's Brief at 13 (citing, *inter alia*, **Commonwealth v. Lambert**, 795 A.2d 1010, 1016 (Pa. Super. 2002)) ("Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy."). Accordingly, Appellant's **Brady** claim fails.

Thus, after a thorough review of the record and briefs in this case, we are unconvinced that any of Appellant's arguments entitles him to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 6/16/2015