599 A.2d 624

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Cornell L. MITCHELL, Appellant.**

Supreme Court of Pennsylvania.

Sept. 30, 1991.

548

R. Bruce Evanick, Chief Public Defender, for appellant.

H. Stanley Rebert, Dist. Atty., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the direct appeal from the conviction of murder of the first degree and the imposition of a death sentence upon the Appellant, Cornell L. Mitchell, pursuant to 42 Pa.C.S. § 9711.[1] Appellant, on June 18, 1988, was arrested and charged with criminal homicide,[2] burglary,[3] robbery,[4] and criminal conspiracy [5] following the death of Kwame Beatty. Thereafter, on December 30, 1988, the Appellant pled guilty to all charges before the Honorable Richard H. Horn of the Court of Common Pleas of York County. A degree of guilt hearing ensued on February 21, 1989, after which Judge Horn found the Appellant guilty of murder of the first degree, robbery, burglary and criminal conspiracy.

A sentencing hearing commenced on February 27, 1989, and the judge immediately informed the Appellant that he had the right to have a jury determine his sentence, but the Appellant waived this right.[6] Following the sentencing

---

1. 42 Pa.C.S. § 9711(h)(1) provides:
 **(h) Review of death sentence.—**
 (1) A sentence of death shall be subject to automatic review by the Supreme Court of Pennsylvania pursuant to its rules.

2. 18 Pa.C.S. § 2501.

3. 18 Pa.C.S. § 3502.

4. 18 Pa.C.S. § 3701.

5. 18 Pa.C.S. § 903.

6. The Sentencing Code, 42 Pa.C.S. § 9701 *et seq.*, provides:
 If the defendant has waived a jury trial or pleaded guilty, the sentencing proceeding shall be conducted before a jury impaneled

hearing, the trial judge concluded that the aggravating circumstances found outweighed the mitigating circumstances present and imposed the penalty of death. Postverdict motions were filed and denied, and the trial judge formally imposed sentence.[7] Now, in this appeal, the Appellant alleges various trial court errors committed during his sentencing hearing.

## Sufficiency of the Evidence

■ Although the Appellant does not challenge the sufficiency of the evidence, we are compelled to review the record to determine whether the Commonwealth has established, beyond a reasonable doubt, the elements necessary to sustain a conviction of murder of the first degree.[8] *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *rehearing denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

■ A plea of guilt to the general charge of murder is not a plea of guilt to murder of the first degree. *Commonwealth v. Chapman*, 359 Pa. 164, 58 A.2d 433 (1948). Such a plea, as was made by Appellant, is simply an acknowledgement by a defendant that he participated in certain acts with a criminal intent. *Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d 1303 (1984). Once such a plea is tendered, the burden is on the Commonwealth to establish the essential elements of the higher degree of crime. *Chapman*,

for that purpose unless waived by the defendant with the consent of the Commonwealth, in which case the trial judge shall hear the evidence and determine the penalty in the same manner as would a jury.

7. Appellant was also sentenced to undergo imprisonment for a period of not less than 10 years nor more than 20 years for the burglary conviction, a period of not less than 5 years nor more than 10 years for the robbery conviction, and a period of not less than 5 years nor more than 10 years for the criminal conspiracy conviction, to run consecutively.

8. The Crimes Code defines murder of the first degree as:
[a] criminal homicide ... committed by an intentional, i.e., willful, deliberate and premeditated ... killing. 18 Pa.C.S. § 2502(a), (d).

*supra; Commonwealth v. Bricker,* 458 Pa. 367, 326 A.2d 279 (1974). To prove murder of the first degree, the Commonwealth must demonstrate that the defendant specifically intended to kill. *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982). The Commonwealth must show: (1) that a human being has unlawfully been killed; (2) that the person accused did the killing; (3) that the killing was done with malice aforethought, in addition to the establishment of premeditation and deliberation. *Id.*

We have reviewed the record and conclude that the Commonwealth fulfilled its burden when it established the following facts. Prior to June 18, 1988, three minors, Michael Lehman, Dwayne Morningwake and Miguel Yoder, ran away from the Children's Home of York (Home). The Home, established for the purpose of providing counseling, education, and socialization, housed youngsters between the ages of 14 and 18. Although it was not affiliated with the York County Juvenile Court System, it was paid on a *per diem* basis for its services. Lehman, Morningwake and Yoder were all placed in the Home pursuant to court ordered commitments—two were placed there by probation departments and one from a children and youth department.

These individuals met the Appellant while they were on their way to a party and they asked him to purchase beer for them. He obliged and joined them at the party. After the party, all three accompanied the Appellant to his sister's home. Later in the evening of June 16, 1988, or early in the morning of June 17, 1988, Lehman left the Appellant's sister's home and was apprehended and returned to the Home. However, he quickly escaped and returned to the group. When he arrived, he found the Appellant, Morningwake, and Yoder discussing Kwame Beatty, the victim, a resident counselor assigned to work in the Home. All of the youths were complaining that the victim was "too hard" on them, i.e., he was a disciplinarian, and he required the residents to follow all of the house rules. The youths did not like this discipline and they decided to kill Mr. Beatty.

Armed with knives, the co-conspirators set forth for the Home sometime between midnight and 1:00 a.m., on June 18, 1988. They stopped in a cemetery, across the street from the Home, where they took off their socks and placed them over their hands to avoid leaving fingerprints. They then climbed up a fire escape and onto a balcony, then over a railing and onto a porch roof, where they found an open window that led into a bedroom. Once inside the house, Lehman remained on the second floor. His instructions were to kill any resident who woke up and attempted to help the victim. The Appellant, Yoder, and Morningwake proceeded downstairs where they went into the victim's bedroom and surrounded his bed.

The Appellant tapped the victim and said, "Brother, you won't never hurt nobody else," and stabbed him with a butcher's knife (T.T., p. 163). The victim awoke, panicked, and yelled for help. He pleaded with Morningwake and Yoder to help him, but they held his legs while the Appellant stabbed him. Finally, the Appellant punched the victim in the head, who fell, motionless, to the floor. All told, the Appellant, Yoder and Morningwake stabbed the victim a total of twenty-one times.

By this time, Lehman left his second floor post and joined the group. They broke into a locked storage area and stole food, cigarettes, money, the victim's wallet, and his car keys. They drove the victim's car to Harrisburg where they disposed of their stolen booty and abandoned the vehicle. They returned to York, by bus, and were arrested.

The Appellant initially told the police that he did not know about the murder because he was in Harrisburg at the time of the killing. However, he admitted that he knew the youths were runaways from the Home, that he hid them from the police, and that he provided them with alcohol and drugs. The police charged the Appellant with corruption of minors and arrested him. While the Appellant was being arraigned, Miguel Yoder led the police through Harrisburg where they collected the discarded evidence. The police recovered blood-stained clothing, knives, the victim's wallet

and identification, and the abandoned automobile. The Appellant could not secure bail, so the arresting officer returned him to the York City Police Department, where he stayed the night. On Saturday, June 19, 1988, after the police informed the Appellant they found the items he discarded in Harrisburg, the Appellant admitted his involvement in the murder. There is no question but that this evidence was more than sufficient to establish the willful, deliberate and premeditated murder of Kwame Beatty. Thus, we will proceed to discuss Appellant's allegations of error which occurred during the penalty phase.

### Penalty Phase

■ Following the sentencing hearing, the trial judge found that the evidence established three aggravating circumstances,[9] and two mitigating circumstances.[10] He further concluded that the aggravating circumstances outweighed the mitigating circumstances. First, Appellant complains that the evidence does not support a finding of aggravating circumstance number three: in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense. 42 Pa.C.S. § 9711(d)(7). The Appellant argues that our legislature enacted this statute with the intent that it be interpreted by our courts to apply to situations where there is more than a mere possibility of danger, or a risk of danger. He insists, he did not have a preconceived plan to

9. The three aggravating circumstances found by the trial judge were: 1) that the victim, Kwame Beatty, was a public servant concerned in the official detention as defined in Title 18, Section 5121, and was killed in the performance of his duties; 2) that the [Appellant] committed the killing while in the perpetration of a felony; and 3) that by virtue of the conduct of the parties the [Appellant] and the three other people knowingly created a grave risk of death to other persons who were residents of the household in addition to the victim of the offense (T.T., p. 89).

10. The two mitigating circumstances found by the trial judge were: 1) that the [Appellant] had no significant history of prior convictions; and 2) that the [Appellant] has a borderline intellectual capacity. He's emotionally immature. His ability to reason is that of an adolescent, and he is the product of an unstable and abusive childhood and has suffered many of life's misfortunes (T.T., p. 89).

kill any other resident. He merely discussed the possibility that others might have to be killed. Appellant also reminds us of the fact that no contact took place between the conspirators and the residents.

■ The fact that "another person" is lucky, and is not injured, is of no importance. *Commonwealth v. Watson,* 523 Pa. 51, 565 A.2d 132 (1989). The legislature enacted section 9711(d)(7) to address the risk created by an actor's conduct. *Id.* It does not direct us to consider the risk of death *avoided* by the action, or the inaction, of an unwitting intended victim. When we examine a finding that section (d)(7) is applicable, we review the actor's conduct to determine whether his conduct brought others into a life-threatening situation.

Viewing the evidence in this light, it appears that the Appellant was deeply concerned that one of the residents would become an eyewitness to the crime. Pursuant to a pre-conceived plan, the Appellant entered the Home and stationed an armed co-conspirator on the second floor for the sole purpose of killing any resident who left his room. The potential for harm then increased when the Appellant woke the victim. This allowed the victim to scream for help as the Appellant stabbed him. The fact that the residents remained asleep did not decrease the "created risk of harm." Contrary to the Appellant's argument, the risk of death did not decrease because the residents remained asleep, it decreased only when he left the Home.

A review of our cases reveals that we have uniformly held that the evidence was sufficient to support a finding of this aggravating circumstance where the actor knowingly created a grave risk of death to another by his conduct and not whether the conduct actually resulted in injury to another. See, *Watson, supra,* where the victim's son was hiding inside of a closet when the defendant randomly fired a bullet into the closet which missed the young boy and lodged into the door frame; *Commonwealth v. Morris,* 522 Pa. 533, 564 A.2d 1226 (1989), where the defendant fired three shots at the victim and two hit him directly, and the

jury concluded that the defendant was not only shooting at the victim, but was also shooting at a repairman who was standing nearby; *Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988), where the defendant shot the victim three times and the bullets travelled through the victim's body and ricocheted off the ground in the vicinity of a witness, sitting on her front porch with two friends; *Commonwealth v. Hardcastle*, 519 Pa. 236, 546 A.2d 1101 (1988), where the defendant set fire to a home after he killed all of the residents; *Commonwealth v. Moser*, 519 Pa. 441, 549 A.2d 76 (1988), where the defendant took a high-powered rifle from his car, shot his two daughters in the head, and shot his wife in the chest before he raised the gun and shot it into the air in a crowded church parking lot; *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764 (1986), the defendant intentionally burned down the home in which his mother, his wife, and his daughter lived; *Commonwealth v. Whitney*, 511 Pa. 232, 512 A.2d 1152 (1986), where the defendant robbed the occupant of the first home at gunpoint, he attempted to rape the female occupant of the second home before he murdered the male occupant; *Commonwealth v. Griffin*, 511 Pa. 553, 515 A.2d 865 (1986), where the defendant shot the victim in the head while dancing next to her in a crowded, college, dormitory room; *Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984), where the defendant shot through a car windshield wounding the passenger who was in the car with the murder victim.

We have no trouble in concluding that the evidence supports a finding that the Appellant, through his overt conduct, knowingly created a grave risk of death to the other residents of the home, by his pre-conceived plan to have them killed if they awoke during the perpetration of the victim's murder.

Next, the Appellant claims that the trial court erred because it failed to find his remorse to be a mitigating factor. The Appellant argues that his evidence was sufficient to establish his remorse and therefore the factfinder

was required to find the existence of remorse (mitigating circumstance 8) as "any other evidence of mitigation." See, 42 Pa.C.S. § 9711(e)(8).

In *Commonwealth v. Rolan*, 520 Pa. 1, 549 A.2d 553 (1988), the defendant raised a similar argument. During his sentencing hearing, Rolan presented evidence to establish the mitigating circumstance announced in section (e)(8). The jury rejected this evidence and sentenced him to death. Rolan claimed that he sustained his burden of proof when he presented evidence to establish the existence of mitigating factor (e)(8) and the jury erred, when it did not rule in his favor. We reviewed Rolan's claim and reject his argument.

It is a fundamental rule that a factfinder may believe all, or none, of a party's evidence. *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929 (1990). Under our legislative scheme:

> it is exclusively a jury question whether any mitigating factor exists and when the jury concludes upon its review of the evidence that none can be found, it is acting within its exclusive function and authority and its decision is conclusive.

*Rolan, supra.*

In this instance, the trial judge, sitting as the factfinder, reviewed all of the evidence presented and concluded that, although the Appellant's remorse was noteworthy, it did not rise to the level of a mitigating factor. The difference between this case and the *Rolan* case is that a judge, instead of a jury, heard the evidence and determined the penalty "in the same manner as would a jury." See, 42 Pa.C.S. § 9711(b). This is a superficial distinction since the trial judge was acting pursuant to the statutory direction, and his decision as factfinder is conclusive, as is any jury's.

And finally, the Appellant argues that the lower court modified its sentencing order of February 28, 1989, without notice of counsel, a violation of 42 Pa.C.S. § 5505.[11] In his

11. 42 Pa.C.S. § 5505. **Modification of orders**

Sentencing Finding and Order of February 28, 1989, the trial judge stated that the "aggravating circumstances outweighed the mitigating circumstances." Then, in his Opinion of February 28, 1990, he stated, "any one of the aggravating circumstances clearly outweighs the mitigating circumstances." (Trial court opinion p. 20.) Since we have affirmed all of the aggravating circumstances found by the trial judge, the discrepancy raised by the Appellant is of no moment.

 Finally, pursuant to our statutory obligation to review death cases to determine whether the imposed sentence of death is "excessive or disproportionate to the penalty imposed in similar cases" (42 Pa.C.S. § 9711(h)(3)(iii), we have conducted an evaluation of all convictions of murder of the first degree prosecuted under our Death Penalty Statute, aided by the comprehensive study prepared at our order by the Administrative Office of Pennsylvania Courts. (See, *Commonwealth v. Frey*, 504 Pa. 428, 475 A.2d 700 (1984)). That review reveals no excess or disproportionality in the sentence imposed as compared to other first degree murder cases where the evidence involved three aggravating circumstances and two mitigating circumstances.

For the foregoing reasons, we sustain the convictions and affirm the judgments of sentence.[12]

Except as otherwise provided or proscribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed.

12. The Prothonotary of the Supreme Court is directed to transmit the full and complete record of the trial, sentencing hearing, imposition of sentence and review by this Court to the Governor pursuant to 42 Pa.C.S. § 9711(i).