**Commonwealth v. Fuentes-Flores**

*Christopher Larsen,* for Commonwealth.
*Douglas A. Conrad* and *Merrill Spahn,* for defendant.

ASHWORTH, *J.,* May 21, 2008—Before the court is defendant Pedro Fuentes-Flores' motion for reconsideration of this court's order denying in part defendant's motion to quash notice of the aggravating circumstance at 42 Pa.C.S. §9711(d)(7). For the reasons set forth below, this motion will be granted and the notice of aggravating circumstance will be quashed.

## I. BACKGROUND[1]

On May 23, 2007, at 12:27 a.m., Officer Lisa Gehr of the East Lampeter Township Police Department was dispatched to the 400 block of Greenland Drive, East Lampeter Township, for a reported hit-and-run accident. There she met with a witness who described a red Jeep Cherokee as being the vehicle involved in the accident. The witness stated he recognized the Jeep as belonging

---

1. The facts are gleaned from a review of the criminal record in this case, as well as the briefs of the parties.

to a neighbor and directed Officer Gehr to a male subject walking in front of 413 Greenland Drive as one of the people associated with the Jeep.

Officer Gehr approached the subject and identified him as the defendant, Pedro Fuentes-Flores. Officer Gehr was familiar with defendant from previous encounters involving him and Karen Crowley. Defendant Fuentes-Flores was observed talking on a cellular telephone, which he closed quickly upon Officer Gehr's approach. Officer Gehr asked defendant if she could speak with him. Defendant responded, "My friend died." Officer Gehr asked defendant if they could go inside to talk. Defendant proceeded into the residence at 413 Greenland Drive, followed by Officer Gehr.

Officer Gehr knew that Karen Crowley also resided at 413 Greenland Drive. Officer Gehr asked defendant whether Karen was home, to which defendant responded, "she is here." As Officer Gehr reached the top of the steps, she observed the victim, Karen Crowley, lying naked on the floor of the apartment. The officer observed a pool of blood to the left side of the victim's head and what appeared to be a purple/black bruise on the left side of the ribs. Ms. Crowley's skin was pale, gray and waxy. The victim was unresponsive and did not appear to be breathing. Officer Gehr found no respirations or pulse. Officer Gehr also observed an empty clear glass bottle positioned upright between the victim's upper legs.

Detective Scott Eelman of the East Lampeter Township Police Department arrived at the scene and examined the victim. He noted burn marks on the victim's body and the carpet beneath her, specifically, the carpet between

the left upper arm and the left side of Ms. Crowley's chest. There was soot transfer and discoloration of the skin consistent with a burn on the left side of Ms. Crowley's chest. The victim also had several burns in the inner aspect of her left upper arm. Finally, he observed a bottle labeled "Olive Oil" between the victim's legs and a second bottle labeled "Lemon Oil" near the victim's head. A strong odor of lemon emanated from Ms. Crowley's body, and Detective Eelman observed a clear liquid substance in the victim's naval and on the hair in her pubic region. There were obvious stab wounds to the victim's chest. Detective Eelman further detected a strong odor of natural gas or propane in the apartment and discovered that the controls for the four surface burners of the stove and the oven were in the "on" position and that a hissing sound was coming from the range. There was no pilot light in the stove or oven.

On May 23, 2007, defendant Fuentes-Flores gave a statement to the police in which he admitted stabbing the victim in the chest with a knife multiple times. He also admitted to pouring a liquid on her in order to accelerate a fire after turning on the gas at the stove in an attempt to ignite a fire.

The victim's residence, 413 Greenland Drive, is located inside an apartment complex. The apartment is on the second floor of a two-story building. There are a total of eight apartments located in the same building as 413 Greenland Drive, occupied by approximately 13 tenants. The apartments span the width of the building. Each apartment has an entrance on the front of the building and a patio or exterior balcony in the back. The apartments below and next to 413 Greenland Drive ex-

hibited signs of habitation on May 23, 2007, and a police canvas revealed that several apartments were occupied on the night in question.

On May 24, 2007, Trooper Brian Herr, who is the fire marshal with the Pennsylvania State Police, examined the victim's residence and concluded that the fire was intentionally ignited and, therefore, considered an incendiary or arson fire. On May 24, 2007, the Lancaster County Forensic Pathologist, Wayne Ross M.D., conducted an autopsy on Karen Crowley and concluded that she was murdered and that her death was caused by stab wounds to her chest.

As a result of the investigation, defendant was arrested and charged with criminal homicide in the stabbing death of Karen Crowley. He was also charged with arson and creating a risk of catastrophe for intentionally starting a fire in the apartment of Karen Crowley by placing oil on the victim and turning on the gas burners and the gas oven and extinguishing the pilot light before igniting a fire.

Pursuant to Pa.R.Crim.P. 802, the Commonwealth filed a notice of intent to seek sentence of death on July 19, 2007. Specifically, the Commonwealth believed it could prove two statutory aggravating circumstances: (1) the creation of a grave risk of death to another person in addition to the victim of the offense, 42 Pa.C.S. §9711(d) (7); and (2) a killing while in the perpetration of a felony, 42 Pa.C.S. §9711(d)(6).[2]

---

2. Section 9711 of the Judicial Code provides in relevant part:

"*(d) Aggravating circumstances.*—Aggravating circumstances shall be limited to the following: . . .

On December 27, 2007, defendant filed a motion to quash those aggravating circumstances on the ground that no evidence existed to support them. Specifically, he asserted that the Commonwealth would not be able to offer prima facie evidence that the victim was alive at the time that defendant committed the offense of arson, the activity relied upon by the Commonwealth to support both aggravating circumstances. On January 18, 2008, the Commonwealth filed an answer to defendant's motion conceding the inapplicability of the aggravating circumstance set forth at section 9711(d)(6),[3] but contesting defendant's motion with respect to the applicability of the (d)(7) aggravator.

---

"(6) The defendant committed a killing while in the perpetration of a felony.

"(7) In the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. §§9711(d)(6) and (7).

3. The Commonwealth conceded that Pennsylvania case law has never defined the language "in perpetration of" found in section 9711(d) (6) to include activity that occurs *following* the killing. It further acknowledged that Pennsylvania's death penalty statute is to be strictly construed. See *Commonwealth v. Stallworth,* 566 Pa. 349, 373, 781 A.2d 110, 124 (2001) ("[I]n the context of a statute defining a category of persons against whom it is permissible to impose a sentence of death, such strict construction should militate in favor of the least inclusive interpretation." (citing *Zant v. Stephens,* 462 U.S. 862, 877 (1983) (stating that aggravating factors must "genuinely narrow the class of death-eligible persons" in a way that reasonably "justifies the imposition of a more severe sentence on the defendant compared to others found guilty of murder"))). Accordingly, given the fact that the Commonwealth conceded that the felony followed the killing, it was not "in perpetration of" the killing and this aggravator is not applicable in the instant case.

On February 15, 2008, the court entered an order granting defendant's motion in part and denying the motion in part. Specifically, the motion was granted as to the aggravating circumstance set forth at section 9711(d)(6), but denied with respect to the applicability of the (d)(7) "grave risk of death" aggravator.

On March 4, 2008, defendant filed a motion for reconsideration of the court's order of February 15, 2008, and requested oral argument. Defendant's request was granted and oral argument was heard in-chambers on April 3, 2008, and again on May 5, 2008. Supplemental briefs having been filed by the parties, this matter is now ripe for disposition.

## II. DISCUSSION

In considering whether a matter is properly designated as a capital case by the prosecution, the trial court's inquiry under *Commonwealth v. Buck,* 551 Pa. 184, 191, 709 A.2d 892, 896 (1998), is limited to a determination of whether the Commonwealth's notice of aggravating circumstances "includes at least one aggravating factor that is supported by *any* evidence . . . ." (emphasis added) To that end, the Supreme Court formulated the following standard of review for assessing whether the Commonwealth has abused its discretion in designating a case as capital:

"A defendant who claims that there is no evidence supporting the notice of aggravating circumstances bears the burden of proving that contention. If the defendant fails to meet this burden and evidence exists to create a factual dispute regarding whether the aggravating

58

factor(s) exists, the defendant's motion should be summarily denied as no abuse of discretion by the prosecutor is apparent. To the contrary, however, if the defendant makes a showing that no evidence exists to support the aggravating circumstance alleged, the trial court may require minimal disclosure by the Commonwealth. If no evidence is presented in support of any aggravating circumstance, the trial court may rule that the case shall proceed non-capital. This ruling shall be without prejudice to the Commonwealth to file an amended . . . notice if it subsequently becomes aware of evidence in support of an aggravating factor." *Id.* at 192, 709 A.2d at 896-97. (footnotes omitted)

Instantly, defendant Fuentes-Flores contends that no evidence exists to support the (d)(7) aggravator, that is, that "*in the commission of the offense* the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense." 42 Pa.C.S. §9711(d)(7). (emphasis added) According to this statutory language, the grave risk of death to the other people in the multi-unit apartment building must have occurred "in the commission" of Karen Crowley's murder.

Defendant has raised two arguments in support of his claim for the inapplicability of the (d)(7) aggravator under the circumstances of this case. First, defendant contends that "the 9711(d)(7) aggravating circumstance is inapplicable to any situation in which the 'other persons' are endangered by activity that is *distinct* from the activity that was the cause of death on [sic] the murder victim, [sic] In this case, arson was not the cause of death. Stabbing was the cause of death. The activity of arson— whether are [sic] not it followed the death of the murder

victim—does not have the requisite nexus to the murderous activity to engender the 9711(d)(7) aggravating circumstance. Accordingly, in the first instance, defendant asserts that the 9711(d)(7) aggravating circumstance is inapplicable whether or not the victim was dead when defendant commenced the activity constituting the offense of arson." (See defendant's motion for reconsideration at ¶10.) (emphasis in original)

Alternatively, and "[i]n an abundance of caution," defendant avers that assuming, for the sake of argument, that the law would apply the (d)(7) aggravator to some situations in which the defendant endangered others by engaging in activity distinct from the murderous activity, it must be *prior* to the death of the murder victim. *Id.,* citing *Commonwealth v. Bolden,* 562 Pa. 94, 753 A.2d 793 (2000).

A thorough review of this Commonwealth's case law leads to the disquieting conclusion that the Supreme Court has inconsistently construed the phrase, "in the commission of the offense." While most of the decisions have strictly held that the grave risk must be in the actual commission of the murder, others have found the grave risk in the entire criminal episode that includes the murder.

As argued by defendant, "[t]here is clear authority that limits the section 9711(d)(7) aggravating circumstance to situations in which the other persons are in the 'zone of danger' that the defendant created by killing the actual murder victim. Pursuant to that authority, the section 9711(d)(7) aggravating circumstance requires a strict temporal nexus between the activity that constitutes the murder and the activity that constitutes a danger to per-

60

sons other than the murder victim. The section 9711(d)(7) aggravating circumstances [sic] does not apply to situations in which the conduct that endangers other persons occurs after the death of the murder victim." (See defendant's memorandum of law in support of motion to quash at 4.)

The Pennsylvania Supreme Court announced this "nexus" principle in *Commonwealth v. Paolello,* 542 Pa. 47, 665 A.2d 439 (1995):

"[I]t is clear that sufficient evidence to support this particular aggravating circumstance arises only in those factual situations where a nexus exists connecting the 'other persons' to the zone of danger created by the defendant's actions in killing the victim. . . .

"The risk of harm to others must occur or be imminent at the time of the acts leading to the death of the victim, for this aggravating circumstance to be applicable to a penalty determination." *Id.* at 82, 665 A.2d at 457.

Thus, the court held that the (d)(7) aggravator is applicable only in those instances where "other persons are 'in close proximity' to the decedent 'at the time' of the murder, and due to that proximity are in jeopardy of suffering real harm." *Id.* at 80, 665 A.2d at 456. Accord, *Commonwealth v. Stokes,* 532 Pa. 242, 260, 615 A.2d 704, 713 (1992) (plurality) (grave risk aggravator "applies to situations where the defendant in the course of killing his particular victim acts in a manner which endangers the lives of others close in proximity to the intended or actual victim").[4]

---

4. In *Stokes,* three persons were murdered; two died when the defendant opened the walk-in refrigerator where he had confined four

The defendant in *Paolello* beat two individuals. One of the victims received medical treatment and survived. The other victim refused medical treatment; rather the defendant kept the victim in his bedroom and fed him large quantities of vodka. At trial the cause of death was attributed equally to the trauma from the beating and to alcohol poisoning. The Supreme Court held that the evidence was insufficient to support the jury's finding of the grave risk aggravator. Specifically, the alcohol was not administered to the second beating victim until after the first beating victim had left the defendant's room. Thus, at the time the defendant was engaged in the process of murdering the second beating victim, the first beating victim was no longer within the "zone of danger." 542 Pa. at 82, 665 A.2d at 457. The Supreme Court applied the nexus principle from *Paolello* five years later in *Commonwealth v. Bolden,* 562 Pa. 94, 753 A.2d 793 (2000), when it again reversed the trial court's application of the (d)(7) aggravator. *Bolden* involved a situation in which the defendant entered a sporting goods store with the intent to commit a robbery. He shot and killed one of the employees, John Calabro. While the defendant was still present at the murder/robbery scene, another employee, Michael Elder, entered the building from the parking lot. The defendant shot Elder, but did not kill

---

people, firing into the group, killing two persons, and wounding two others; the third victim was shot while alone in a different room. The application of the (d)(7) aggravating circumstance was upheld in relation to the victims within the refrigerator; but vacated as to the third victim, as no other persons were within the zone of danger at the time he was shot.

him. At trial, the jury was presented with the (d)(7) aggravator and found that it was proven in that case.

On appeal, the Supreme Court reversed. The court, relying on its earlier decision in *Paolello,* held that the (d)(7) aggravator is limited to those situations where the "other persons are in 'close proximity' to the decedent 'at the time' of the murder, and due to that proximity are in jeopardy of suffering real harm." 562 Pa. at 104, 753 A.2d at 798. Specifically, the Supreme Court concluded that because Elder was not nearby or within the zone of danger when Calabro was killed and, presumably, Calabro was already dead when Elder entered the store, it was error for the trial judge to instruct the jury that it could find as an aggravating circumstance that the defendant placed Elder in a grave risk of death when he killed Calabro. *Id.* at 104, 753 A.2d at 798-99.

In a concurring opinion, Justice Nigro further explained this "nexus" or "zone of danger" principle:

"In the instant case, the majority correctly concludes that there was insufficient evidence to support the Commonwealth's theory that appellant's fatal shooting of Mr. Calabro within the sporting goods store placed Mr. Elder in grave risk of death because there was simply no showing that Mr. Elder was put in danger at the time of Mr. Calabro's murder. To be sure, Mr. Elder was put in danger later, when appellant shot him—but that shooting simply did not occur 'in the commission of the offense,' *i.e., during Mr. Calabro's murder* . . . . I believe that it would undermine the plain meaning and unambiguous intent of the statute in question to find that (d)(7) applies to cases such as the instant one, where there is no indica-

tion that a third party was placed in grave risk of death during the murder of the intended victim due to that third party's temporal and spatial proximity to the victim." *Id.* at 106, 753 A.2d at 800 (Nigro, J., concurring). (emphasis in original) (footnotes omitted)

These two decisions by the Supreme Court, *Paolello* and *Bolden,* suggest that the phrase "in the commission of the offense" means "during the murder" or "at the time of the murder" and not *following* the murder. A review of the over one dozen cases since *Paolello* in which the (d)(7) aggravator has been upheld by the Supreme Court supports this position. See for example, *Commonwealth v. Wholaver,* 588 Pa. 218, 903 A.2d 1178 (2006) (grave risk of death to another person found when defendant shot his daughter while she held an infant in her arms); *Commonwealth v. DeJesus,* 584 Pa. 29, 880 A.2d 608 (2005) (grave risk of death to another person found when defendant, while standing on a rooftop, opened fire with an assault rifle on a car passing through a street in a residential area); *Commonwealth v. Randolph,* 582 Pa. 576, 873 A.2d 1277 (2005) (grave risk of death to another person found when defendant drove by a bar and opened fire on a group of bystanders, killing two and seriously injuring several others); *Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26 (2005) (grave risk of death to another person found when defendant set fire to his home, killing his daughter, while his girlfriend was present in the home); *Commonwealth v. Smith,* 580 Pa. 392, 861 A.2d 892 (2004) (grave risk of death to another person found when defendant shot and killed one of a group of people being robbed in a parking lot adjacent to a night club); *Commonwealth v. Dougherty,* 580

Pa. 183, 860 A.2d 31 (2004) (grave risk of death to another person found when defendant set fire to his row home killing his two sons); *Commonwealth v. Mitchell,* 576 Pa. 258, 839 A.2d 202 (2003) (grave risk of death to another person when defendant fired shots at a large crowd, killing two and wounding three others); *Commonwealth v. Busanet,* 572 Pa. 535, 817 A.2d 1060 (2002) (grave risk of death to another person when defendant fired shots at his intended victim on a street where three young children were playing); *Commonwealth v. Hutchinson,* 571 Pa. 45, 811 A.2d 556 (2002) (grave risk of death to another person found when defendant repeatedly shot at his intended victim while her two children were standing right next to her at an elevator); *Commonwealth v. Philistin,* 565 Pa. 455, 774 A.2d 741 (2001) (grave risk of death to another person found when defendant emerged from his vehicle during a routine traffic stop and started shooting at the two approaching officers, killing one and critically wounding another); *Commonwealth v. Fisher,* 564 Pa. 505, 769 A.2d 1116 (2001) (grave risk of death to another person found when defendant fired three shots at the victim with an individual only a few feet away, and at the time of the murder, the person was asleep on a bed adjacent to the victim); *Commonwealth v. Counterman,* 553 Pa. 370, 719 A.2d 284 (1998) (grave risk of death to another person found when defendant murdered his three children by house fire which endangered his wife, neighbors and firefighters); *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025 (1996) (grave risk of death to another person found when defendant fired a fatal bullet at the victim lying on the floor of the bedroom while another person was on the

floor near the victim and two others were on a nearby bed); *Commonwealth v. Abdul-Salaam,* 544 Pa. 514, 678 A.2d 342 (1996) (grave risk of death to another person found when defendant opened fire at police officer while he was handcuffing the co-defendant); *Commonwealth v. Speight,* 544 Pa. 451, 677 A.2d 317 (1996) (grave risk of death to another person found when defendant opened fire on a group of people standing on the sidewalk, killing two and wounding two others).

The nexus principle enunciated in *Paolello* in 1995 followed a series of earlier decisions by the Supreme Court which affirmed the (d)(7) aggravator where the grave risk arose during the course of the murderous act itself. See for example, *Commonwealth v. Walker,* 540 Pa. 80, 656 A.2d 90 (1995) (grave risk of death to another person found when defendant fired shots at victim sleeping on a couch while another person slept on a nearby couch); *Commonwealth v. Jones,* 539 Pa. 222, 651 A.2d 1101 (1994) (grave risk of death to another person found when defendant bound, gagged and set on fire two women in the basement of a row home in the City of Philadelphia); *Commonwealth v. Wilson,* 538 Pa. 485, 649 A.2d 435 (1994) (grave risk of death to another person found when defendant fired gunshots into a crowded bar, killing the victim and endangering 15 other patrons); *Commonwealth v. Meadows,* 534 Pa. 450, 633 A.2d 1081 (1993) (grave risk of death to another person found when defendant killed his intended victim with the victim's wife and two children in the room); *Commonwealth v. Moore,* 534 Pa. 527, 633 A.2d 1119 (1993) (grave risk of death to another person found when defendant shot and killed a robbery victim lying on the

floor next to two others); *Commonwealth v. Williams,* 532 Pa. 265, 615 A.2d 716 (1992) (grave risk of death to another person found when defendant fired into a car containing several persons); *Commonwealth v. Lambert,* 529 Pa. 320, 603 A.2d 568 (1992) (grave risk of death to another person found when defendant shot and killed his victim in a public bar); *Commonwealth v. Watson,* 523 Pa. 51, 565 A.2d 132 (1989) (grave risk of death to another person found where the victim's son was hiding inside of a closet when the defendant randomly fired a bullet into the closet which missed the young boy and lodged into the door frame); *Commonwealth v. Logan,* 519 Pa. 607, 549 A.2d 531 (1988) (grave risk of death to another person found when ax-wielding defendant attacked stranger on a public bus in the midst of other passengers); *Commonwealth v. Griffin,* 511 Pa. 553, 515 A.2d 865 (1986) (grave risk of death to another person found when defendant shot the intended victim at a crowded party). However, we are mindful of those cases where the Supreme Court has permitted the aggravating circumstance to be applied where the endangerment was not proximate in time or in location to the act that caused the death of the homicide victim. Most notably, in *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97 (1995), the Supreme Court upheld the (d)(7) aggravator where the defendant and his co-conspirators fired shots at a pursuing eyewitness to the murder that happened several blocks away. Specifically, in *Johnson,* the defendant shot his victim six times, including once in the back of the head. The murder occurred on a public sidewalk in sight of several bystanders. The defendant and his co-defendants then fled the scene in a vehicle. The victim's

uncle, who had witnessed the shooting, "followed the vehicle for several blocks until shots were fired at him from the passenger side of the vehicle." 542 Pa. at 393, 668 A.2d at 101. The jury found the aggravating circumstance of grave risk, and the Supreme Court affirmed. Although the shots fired at the uncle were neither spatially nor temporally related to the fatal shots, and he was clearly not within the "zone of danger" at the time of the actual murder, the Supreme Court nonetheless found sufficient evidence to support the (d)(7) aggravator and concluded: "appellant and his co-defendants created a grave risk of death to [the uncle] when they fired shots at him as he attempted to pursue them as they fled the scene." 542 Pa. at 409, 668 A.2d at 109. The shots may indeed have caused a grave risk of death to the pursuing uncle, and they were part of one criminal episode, but they were not "in the course of killing" the victim, as required by the nexus test set forth some years later in *Paolello*.

In *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624 (1991), the defendant was convicted of the murder of a counselor at the Children's Home of York. The defendant entered the home at night with three juvenile runaways, one of whom was left on the second floor with a knife and instructions to "kill any resident who woke up and attempted to help the victim." *Id.* at 552, 599 A.2d at 627. The defendant and the other two co-conspirators then proceeded downstairs to the victim's bedroom and stabbed him to death, after waking him first. *Id.* On appeal, the defendant challenged the jury's finding of grave risk claiming there existed only the possibility of grave risk of death to others. *Id.* at 554, 599 A.2d at 628. The

Supreme Court upheld the (d)(7) aggravator, stating that the defendant "through his overt conduct, knowingly created a grave risk of death to the other residents of the home, by his pre-conceived plan to have them killed if they awoke during the perpetration of the victim's murder." *Id.* at 555, 599 A.2d at 628. The *Mitchell* court thus considered the grave risk from the entire criminal episode as there was no evidence that the actual stabbing of the victim subjected any other person to any grave risk.

Similarly, the Supreme Court considered the entire criminal episode in *Commonwealth v. Robinson,* 554 Pa. 293, 315, 721 A.2d 344, 355 (1998), *cert. denied,* 528 U.S. 1082 (2000), when it found the (d)(7) aggravating circumstance applicable where the grave risk occurred *before* the murder. In *Robinson,* the defendant arrived at the apartment of his ex-girlfriend and discovered that her current boyfriend was taking a shower. The defendant shot his ex-girlfriend in the front room of the apartment while her boyfriend was showering in the bathroom. Before the ex-girlfriend lost consciousness, she heard three shots and then the defendant ran past her. When she regained consciousness, she went into the bathroom where she discovered the dead body of her boyfriend in the shower stall. Despite the fact that the defendant murdered the victim after he shot his ex-girlfriend, and that the victim and the ex-girlfriend were not even in the same room at the time of either shooting, the Supreme Court held that there was sufficient evidence to support the (d)(7) aggravator.

Likewise, in *Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988), the Supreme Court held that

a house fire set *after* the defendant had killed the residents was sufficient to support the application of the (d)(7) aggravating circumstance. In *Hardcastle,* the defendant stabbed the victims to death and then set fire to their residence. The Supreme Court found this action, which was part of the entire criminal episode, created a grave risk to others.[5]

While this case law suggests that the (d)(7) aggravator does not apply only to cases where innocent bystanders are located directly near the intended victim as that person is being murdered, this court believes that the Supreme Court has most consistently interpreted the meaning and intent of the statute to be that the (d)(7) grave risk aggravator applies to cases where there is some evidence that a third party was placed in grave risk of death during the murder of the intended victim due to that third party's spatial and temporal proximity to the victim. Hence, our inquiry turns on the point in time at which the commission of the murder of Ms. Crowley started and ended. "A first-degree murder commences

---

5. During the trial in this matter, the prosecutor argued that, in addition to the danger posed to the surrounding neighbors, the defendant knowingly created a grave risk of death to one or both of the victims when he set the fire because he did not know for sure that either of the victims was dead from the stabbings he had inflicted on them. The defendant argued in a later post-conviction collateral relief proceeding that this argument was improper because the medical examiner testified that both of the victims were dead before the fire started. The Commonwealth responded that the prosecutor was focusing on the defendant's state of mind at the time he set the fire, not on whether the victims were in fact dead. The Supreme Court found that, based upon the record evidence, this argument by the prosecutor was not objectionable. See *Commonwealth v. Hardcastle,* 549 Pa. 450, 462, 701 A.2d 541, 547(1997).

when the defendant possesses the specific intent to kill, takes some affirmative act to bring about the death of the victim, and the actions of the defendant eventually result in the death of the victim." *Commonwealth v. Drumheller,* 570 Pa. 117, 146, 808 A.2d 893, 910 (2002).

In the instant case, the Commonwealth has made the following three acknowledgments relative to the commission of the murder: (1) the victim, Karen Crowley, died from the multiple stab wounds to her chest; (2) defendant could not have believed Ms. Crowley was alive after the stabbings that he inflicted upon her;[6] and (3) defendant's attempt to set a fire inside the apartment of the victim was intended "to conceal his crime" of murder. (See Commonwealth's memorandum of law in opposition to defendant's motion for reconsideration at 4 and 5.) Given this posture of the case, we must conclude that the activity that arguably endangered other persons occurred only *after* the commission of the murder.[7]

---

6. Defendant gave a statement to the police shortly after the murder in this case in which he commented on his state of mind at the time he committed the offense of arson:

"[Question] What happened after you stabbed her?

"[Answer] I wanted to set the apartment on fire.

"[Question] Did you try to help Karen after you stabbed her?

"[Answer] Yes.

"[Question] What did you do?

"[Answer] I took the knife out.

"[Question] What else?

"[Answer] She was already dead then." (See defendant's motion to quash aggravating circumstances and bar imposition of a sentence of death at ¶12.)

7. These acknowledgments by the Commonwealth distinguish this case from *Commonwealth v. Solano,* 588 Pa. 716, 906 A.2d 1180 (2006). *Solano* addressed a shooting situation in which the defendant fired several shots at the victim. The shooting happened in a park. The de-

In light of the Commonwealth's acknowledgments and the decisional case law set forth above, we are loathe to employ a more expansive view of the (d)(7) aggravator that looks beyond the actual commission of the murder to the entire criminal episode that includes the murder. For even though there may be other offenses that "are logically and temporally related and share common issues of law and fact" and "are part of a single criminal episode," these offenses cannot support grave risk unless they are part of the murder itself. *Commonwealth v. Watson*, 523 Pa. 51, 72, 565 A.2d 132, 142-43 (1989) (Zappala, J., concurring and dissenting) (wherein the court distinguishes 42 Pa.C.S. §9711(d)(7) from other statutes, where the focus may be on a criminal "episode").

In the instant case, the Commonwealth has failed to present *any* evidence to support its theory that defen-

---

fendant then got closer and fired several more shots into the victim. At that point, the defendant fled. In the process of fleeing, the defendant turned around and fired several more shots toward the crowded park. The (d)(7) aggravator was based on the action of turning around and firing additional shots into an area that was occupied by numerous other people.

The Commonwealth suggests from these facts that the *Solano* murder victim was dead at the time that the fleeing defendant fired additional shots into the crowded park. However, there is no reference in the *Solano* opinion as to whether the victim was dead at the time the defendant engaged in the activity that endangered others. There is no discussion of whether those shots fired by the fleeing defendant occurred before or after the actual death of the victim. In the instant action, the Commonwealth has acknowledged that the victim died from the stab wounds to her chest, that the defendant could not have believed that the victim was still alive when he attempted to set her on fire, and, in fact, that the actions taken by the defendant were an attempt to conceal the murder, rather than complete it.

dant's fatal stabbing of Ms. Crowley within her apartment placed her neighbors in grave risk of death *at the time of* Ms. Crowley's murder. To be sure, the neighbors were put in danger later, when defendant intentionally acted to set the apartment on fire in a desperate attempt to conceal his crime. However, this arson simply did not occur "in the commission of the offense," *i.e.,* during Ms. Crowley's murder. The grave risk of harm to persons other than the intended victim was substantially removed in time from the commission of the murder.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to quash notice of the aggravating circumstance at 42 Pa.C.S. §9711(d)(7) will be granted.

Accordingly, we enter the following:

### ORDER

And now, May 21, 2008, upon consideration of defendant Pedro Fuentes-Flores' motion for reconsideration of this court's order denying in part defendant's motion to quash notice of the aggravating circumstance at 42 Pa.C.S. §9711(d)(7), the briefs filed by the parties, and oral argument of counsel, it is hereby ordered that said motion is granted and the notice of aggravating circumstance will be quashed.